AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
7/23/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ____asi____ DEPUTY


FILED
CLERK, U.S. DISTRICT COURT
7/23/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ____TS____ DEPUTY

United States of America

v.

JUAN CARLOS ARREOLA ARREOLA, and
MARCO ANTONIO ARREOLA ARREOLA,

Defendants.

Case No. 2:25-mj-04608-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of June 19, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm (J. ARREOLA) |
| 18 U.S.C. § 922(g)(5) | Alien in Possession of a Firearm (M. ARREOLA) |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Seth Larson*
Complainant's signature

Seth Larson, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 7/23/2025

Judge's signature

City and state: Los Angeles, California

Hon. Stephanie S. Christensen, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

I, Seth Larson, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrants against:

    a.   JUAN CARLOS ARREOLA ARREOLA ("J. ARREOLA") for a violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, on or about June 19, 2025; and

    b.   MARCO ANTONIO ARREOLA ARREOLA ("M. ARREOLA"), for a violation of 18 U.S.C. § 922(g)(5), Alien in Possession of a Firearm, on or about June 19, 2025.

2. This affidavit is also made in support of an application for a warrant to search a black iPhone in a black case seized from J. ARREOLA on or about June 21, 2025 and currently in the possession of the Los Angeles Police Department in the Central District of California, as described more fully in Attachment A (the "SUBJECT DEVICE").

3. The requested warrant to search the SUBJECT DEVICE in Attachment A seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm); 18 U.S.C. § 659 (Theft from Interstate or Foreign Shipment); and 18 U.S.C. § 371 (Conspiracy to Commit Theft from Interstate or Foreign Shipment) (the "Subject Offenses"), being committed by J. ARREOLA and others known and unknown, as described more fully in Attachment B.

1

Attachments A and Attachment B are incorporated herein by reference.

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrants, and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF AFFIANT

5.  I am a sworn Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since December 2023.  I am a graduate of the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, and have completed specialized training at the ATF National Academy's Special Agent Basic Training course.  I have received training in federal firearms and narcotics laws, narcotics identification, confidential source handling, and various surveillance and investigative techniques.  I am currently assigned to the ATF Los Angeles Field Division, Long Beach Field Office, in California.

6.  Prior to becoming an ATF SA, I was employed with the Department of Homeland Security ("DHS"), under the Federal

Protective Service ("FPS"), as a Law Enforcement Specialist – Explosive Detection Canine Handler ("EDCH") where I received training from FLETC in the enforcement of federal rules and regulations. I have received hundreds of hours of formal and informal training from FLETC's Physical Security Training Program ("PSTP") to include conceptual security considerations, vulnerabilities assessments, and familiarization with hardware and procedures.

7. Prior to becoming an EDCH with FPS, I was an EDCH, a Behavioral Detection Officer ("BDO") and a Transportation Security Officer ("TSO") with DHS, under the Transportation Security Administration ("TSA"). My training consisted of identifying and preventing Improvised Explosive Devices ("IED") from being transported onto an aircraft, by utilizing an X-ray, and various security machinery or conducting security sweeps with a trained canine.

8. In addition, I have many hours of operational experience, where I have provided support to federal buildings, federal courts and airports by conducting security sweeps for the entry of IEDs. I have also received hundreds of hours of explosives training, canine training from TSA, FPS and ATF.

### III. SUMMARY OF PROBABLE CAUSE

9. Law enforcement is currently investigating the theft of approximately 650 Browning Arms Company firearms that were stolen from trains traveling from the Port of Los Angeles to Missouri. As described below, law enforcement obtained a California state search warrant to search a freight shipping

3

warehouse called T.J. Packing in downtown Los Angeles, within the Central District of California. Inside the warehouse, law enforcement recovered 31 of the stolen Browning firearms, specifically Browning Bolt Action Rifles. Based on a review of surveillance footage from T.J. Packing, law enforcement saw two individuals later identified J. ARREOLA and M. ARREOLA opening, manipulating, and inspecting rifles from boxes that law enforcement later recovered in the same area, which contained some of the stolen rifles. As described below, I believe there is probable cause that both men are prohibited from possessing firearms, as J. ARREOLA has previously been convicted of a federal felony offense in the Central District of California, and M. ARREOLA is a Mexican citizen who is illegally present in the United States.

### IV. STATEMENT OF PROBABLE CAUSE[1]

A. **Browning Arms Company Reports Approximately 650 Stolen Firearms from Trains Traveling through the Port of Los Angeles**

10. Since July 2021, law enforcement agencies in Southern California region formed a Cargo Theft Unit ("CTU") task force, comprised of investigators from the Los Angeles Police Department ("LAPD"), the Los Angeles Port Police Department ("LAPP"), and the Union Pacific Railroad Police Department ("UPRPD"). The task force investigates cargo related crimes

---

[1] The facts set forth in Section IV are based on my review of law enforcement reports, a California state search warrant, conversations with other investigators involved in this investigation including, and my own personal involvement of the investigation, unless otherwise noted.

involving roads, railroads, intermodal terminals and the port of Los Angeles and Long Beach.

11.  On or about June 18, 2025, Riverside County Sheriff's Office ("RCSO") and LAPD learned of thefts from two separate Union Pacific Railroad trains with shipping containers containing Browning Arms Company ("Browning") firearms. Specifically, Browning reported that approximately 465 complete rifles and 165 rifle barreled actions[2] were stolen from two trains. The firearms were imported outside of the United States, and were traveling through the Port of Los Angeles in the Central District of California en route to Missouri.

12.  Through the course of their investigation, CTU received information from a confidential source ("CI-1")[3] that some rifles were possibly stored inside a warehouse later identified as a freight shipping business called T.J. Packing in downtown Los Angeles and/or in a white Mercedes sprinter van in

---

[2] A barreled action is that portion containing the breech mechanism by which the firearm is loaded, fired, and unloaded and includes the frame or receiver. A barreled action consists of an action to which a barrel has been attached, usually by threading the forward portion of the action to receive the barrel. A barreled action does not include a stock or grip and cannot be held and fired in the same manner as a complete firearm. This component is legally recognized as the firearm itself, as it contains the essential parts required for firing and is marked with the identifying serial number in accordance with federal regulations.

[3] Based on information provided to me by LAPD detectives and my review of a California state search warrant, I know that CI-1 has been arrested approximately seven or eight times for receiving stolen train property and cargo loads in upwards of $10 million. CI-1 has previously been convicted of grand theft cargo and was sentenced to approximately 2.5 years prison. Based on information provided to me by LAPD detectives, CI-1 has provided reliable information in the past that has been corroborated.

an area later identified in close proximity to the home address associated with brothers J. ARREOLA and M. ARREOLA.[4] Approximately two years prior, CTU arrested M. ARREOLA inside the T.J. Packing warehouse for a violation of California Penal Code Section 496(a) – Receiving Stolen Property, related to a cargo theft investigation.

13. Based on the investigation to date, law enforcement believes that T.J. Packing is a freight forwarding company that, among other tasks, repackages cargo to ship outside of the Central District of California, including to Mexico.

**B.    Law Enforcement Arrest J. ARREOLA for Receiving Stolen Property**

14. Based on law enforcement's investigation as described above, on June 21, 2025, LAPD obtained a California state search warrant to search the T.J. Packing warehouse and the homes of J. ARREOLA and M. ARREOLA.

15. During the search of J. ARREOLA and M. ARREOLA's home on June 21, 2025, law enforcement recovered approximately $1,800 in suspected stolen merchandise (Milwaukee brand jackets).

16. During the search of the T.J. Packing warehouse on June 21, 2025 (and continuing into the early morning hours of June 22), law enforcement recovered 31 Browning rifles.  ATF confirmed that the serial numbers of each of the recovered

---

[4] Based on their investigation, LAPD detectives determined that J. ARREOLA and M. ARREOLA live at 1836 Hancock Street in Los Angeles, California, a few houses away from another relative, Felipe D. Arreola.

rifles matched the list of stolen rifles from one of the stolen Union Pacific trains described above.

17. On or around June 21, 2025, LAPD arrested J. ARREOLA for a violation of California Penal Code Section 496(a) – Receiving Stolen Property. During his arrest, law enforcement seized a black iPhone in a black case (the "SUBJECT DEVICE") from J. ARREOLA.

### C. Law Enforcement Interview M. ARREOLA

18. On June 23, 2025, CTU personnel went to T.J. Packing to have a consensual conversation with M. ARREOLA, which was conducted in Spanish. During the conversation, M. ARREOLA stated, among other things, that he and J. ARREOLA both own T.J. Packing and that only they have access to keys for the warehouse, that he had nothing to do with what his brother was arrested for; that he lives with his brother at 1836 Hancock Street, Los Angeles. M. ARREOLA also stated that he knew the rifles were in the warehouse before the search warrant, but that the rifles belonged to J. ARREOLA.[5]

### D. Surveillance Footage from T.J. Packing Shows J. ARREOLA and M. ARREOLA Handling the Stolen Rifles

19. On June 23, 2025, CTU personnel obtained a California state search warrant to forensically examine two Digital Video Records ("DVR") seized from T.J. Packing during the June 21, 2025 search warrant. Based on their review of the footage, CTU identified the following:

---

[5] Following his arrest, J. ARREOLA stated that M. ARREOLA was the owner of T.J. Packing, and that he was employed as a packer at the warehouse and that his last day of work was on June 20, 2025.

7

   a. On June 19, 2025, at approximately 5:00 p.m., an individual later identified as M. ARREOLA carried a large box into the frame. Shortly after, an individual later identified as J. ARREOLA and another man pulled out clothing from the box and what appeared to be multiple firearms. A review of the footage shows J. ARREOLA and the other man appear to remove rifle buttstocks and barrels, attempting to connect the two components.[6]

   b. That same night, at approximately 7:05 p.m., the footage shows a white Ram ProMaster van stop in front of T.J. Packing, where J. ARREOLA and two other males unloaded numerous boxes from the van, including two large boxes that CTU investigators recognized as being consistent with the cartons in which the stolen Browning rifles were shipped. Footage then shows J. ARREOLA take the two suspected Browning cartons into the warehouse, and M. ARREOLA then move the two cartons to a back room, consistent with where CTU personnel found some of the stolen rifles. Footage also shows J. ARREOLA and M. ARREOLA opening, manipulating, and inspecting rifles from boxes that CTU personnel later recovered in the same area, which contained some of the stolen rifles.

   c. Based on a comparison of the surveillance footage and photographs of J. ARREOLA and M. ARREOLA from a government database and investigators' personal knowledge of the brothers,

---

[6] During the search warrant on June 21, 2022, LAPD did not recover the box containing these firearms and does not currently believe that the firearms referenced in this paragraph are the stolen Browning rifles.

CTU personnel confirmed that J. ARREOLA and M. ARREOLA were the two individuals opening, manipulating, and inspecting the rifles.

### E. J. ARREOLA is a Convicted Felon Prohibited From Possessing Firearms

20. Based on my review of federal court records, I know that J. ARREOLA was convicted in the Central District of California for a violation of 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) on or about December 27, 2023, and is currently serving a 36-month term of probation for his offense. See United States v. Juan Carlos Arreola, Case No. 2:20-cr-00405-FMO-9.

21. Based on my review of the Judgment and Commitment Order in the above-referenced case (Dkt. 280), I know that J. ARREOLA is subject to the following condition of probation:

    a. Defendant shall submit the defendant's person, property, house, residence, vehicle, papers, or other areas under the defendant's control, to a search conducted by a United States Probation Officer or law enforcement officer. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search pursuant to this condition will be conducted at a reasonable time and in a reasonable manner upon reasonable suspicion that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation.

**F.  M. ARREOLA is a Citizen of Mexico who is Illegally Present in the United States**

22. On or about July 22, 2025, Homeland Security Investigations ("HSI") SA Henry Blackwell reviewed records associated to M. ARREOLA's unique fingerprint identifier that are contained in Department of Homeland Security ("DHS") indices.  SA Blackwell learned the following about defendant's immigration history:

    a.  M. ARREOLA is a citizen of Mexico;

    b.  On or about March 5, 2011, the defendant was issued an Expedited Removal Order after being apprehended by the DHS personnel.  M. ARREOLA was physically removed from the United States to Mexico on or about March 05, 2011; and

    c.  HSI SA Blackwell examined DHS databases and found no record of M. ARREOLA legally entering the United States following his last removal on March 05, 2011, and no record of M. ARREOLA obtaining legal status to remain in the U.S. after he was previously removed, and as such M. ARREOLA was illegally present in the U.S. at the time he possessed the Browning rifles.

**G.  Interstate Nexus**

23. On June 24, 2025, an ATF Interstate Nexus Agent examined the 31 stolen Browning firearms and concluded that the firearms were not manufactured in the State of California, and therefore traveled in and/or affected interstate or foreign commerce.

## V.   TRAINING AND EXPERIENCE ON THEFT OFFENSES

24.   From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct theft investigations, I am aware of the following:

   a.   Persons who engage, participate, or are involved with thefts and/or robberies generally maintain records of their stolen merchandise items and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such as in their digital devices, including their cloud storage accounts within those devices.  It has been my experience that people who participate in thefts/robberies often work in teams with other co-conspirators to steal and/or sell stolen property, and will keep the contact information of other co-conspirators or other individuals involved in criminal activities for future purchases or referrals.  Such information is also kept on digital devices and in cloud storage.

   b.   Individuals involved in thefts/robberies frequently use their cell phones to coordinate with co-conspirators and to research theft/robbery locations.  Cell phones, for example, may be used to set meeting locations, pick routes to the thefts/robberies, coordinate times, and recruit theft/robbery crew members.

   c.   Many people also keep mementos from their thefts/robberies, including digital photographs or recordings of themselves possessing stolen merchandise items from the business

11

where the theft/robbery occurred. These photographs and recordings are often shared via social media, text messages, and over text message applications.

        d.    Those who commit thefts/robberies often sell the stolen merchandise or keep it in their possession. On the same hand, those who commit thefts/robberies of cash may launder that money shortly after or make large purchases after the thefts/robberies. Correspondence between persons buying and selling stolen merchandise, laundering money, or making large purchases, often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices. This includes sending photographs of the stolen merchandise between the seller and the buyer, as well as negotiation of prices. In my experience, people who engage in sales of stolen property frequently use phone calls, e-mail, and text messages to communicate with each other regarding stolen merchandise that they sell or offer for sale. In addition, it is common for individuals who engage in robberies to have photographs of the stolen merchandise, large amounts of cash, or new purchases they or other individuals working with them possess on their cellular phones and other digital devises as they frequently send these photos to each other to boast of their stolen merchandise and/or to facilitate sales or transfers of the stolen merchandise or otherwise discuss the proceeds of the robberies.

        e.    Individuals who engage themselves in thefts/robberies often use multiple digital devices, including

digital devices belonging to friends or associates, to minimize the chance of being traced. Additionally, multiple digital devices are often used for communicating with lookout vehicles and other co-conspirators who engage themselves in committing thefts/robberies.

### VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

25. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, among others, is often retrievable from digital devices:

   a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

   b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That

13

evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

   c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

   d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

   e. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

     i. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus,

often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

          ii.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

//
//
//

## VII. CONCLUSION

26.    For all the reasons described above, I respectfully submit that there is probable cause to believe that J. ARREOLA committed the crime of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm); that M. ARREOLA committed the crime of 18 U.S.C. § 922(g)(5) (Alien in Possession of a Firearm); and that evidence, fruits, and instrumentalities of the Subject Offenses, as described in Attachment B, will be found in a search of the SUBJECT DEVICE, as described in Attachment A.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 23rd day of July, 2025.

_____
STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE